IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Herbert Alonzo Robinson, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 8:13-cv-02321-RBH-JDA |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Gina Jarrell, Nurse; Rosita R. Thomas, | ) | |
| Nurse; Pamela C. Derrick, Nurse; Mr. NFN | ) | |
| Rowe, Commissary Personnel; John and | ) | |
| Jane Does, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | )___ | |

This matter is before the Court on a motion for summary judgment filed by

Defendants.  [Doc. 46.]  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local

Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial

matters in cases filed under 42 U.S.C. § 1983 and to submit findings and

recommendations to the District Court.

Plaintiff, proceeding pro se, filed this action on August 19, 2013, alleging violations

of his constitutional rights pursuant to 42 U.S.C. § 1983.[1]  [Doc. 1.]  Defendants filed a

motion for summary judgment on February 11, 2014.  [Doc. 46.]  By Order filed on

February 14, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975),

Plaintiff was advised of the dismissal/summary judgment procedure and the possible

consequences if he failed to adequately respond to the motion.  [Doc. 48.]  Plaintiff filed

a response in opposition on March 3, 2014 [Doc. 52] and submitted additional attachments

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  Accordingly, this action was filed on August 19, 2013.  [Doc. 1-3 at 1(envelope stamped as received by the prison mail room on August 19, 2013).]

on March 10, 2014 [Doc. 54]. Defendants filed a reply on March 13, 2014. [Doc. 55.] The
motion is ripe for review.

## BACKGROUND[2]

At all times relevant to the factual allegations underlying this action, Plaintiff was in
the custody of the South Carolina Department of Corrections ("SCDC") and housed at
Allendale Correctional Institution ("Allendale").[3] [Doc. 1 at 2.] Plaintiff alleges that, in
November 2012, he was provided size 6.5 or 7 "clog-crocodile styled" shoes with holes
even though Defendants knew Plaintiff's foot is size 4 and that, as a result of wearing
shoes with holes, his right pinky toe was injured. [Id. at 3.] Plaintiff alleges that he has
diabetes and requested shoes without holes in them,[4] but Defendant Mr. Rowe ("Rowe")
told Plaintiff he did not care about the possibility of injury. [Id. at 3, 14.] Plaintiff contends
that he was not provided suitable footwear until months later. [Id. at 3.]

According to Plaintiff, on November 24, 2012, Plaintiff's toe was cut because a
sharp object intruded into his clogs, and the nurses stated they would not see Plaintiff;
therefore, his toe became infected, and he was not seen for four days. [Id.] A doctor
ordered daily dressing changes for Plaintiff's wound. [Id. at 4.] However, Plaintiff alleges
that Defendant Gina Jarrell ("Jarrell") ordered Plaintiff to remove the bandages and gauze
and told him she did not care about his diabetes. [Id.] When Plaintiff told her that he could
not do it, she snatched his foot while he was dazed and hurting and roughly yanked off the

---

[2]The facts included in this Background section are taken directly from Plaintiff's Complaint.

[3]Plaintiff was transferred to MacDougall Correctional Institution ("MacDougall") during the pendency
of this action. [See Doc. 25 (notice of change of address).]

[4]Plaintiff contends that he needs shoes without holes because, as a diabetic, he could suffer injury
from cold air or water from rain and puddles soaking his feet. [Doc. 1 at 3.]

bandages and gauze in one swipe, causing Plaintiff to cry out in pain and re-injuring his foot. [*Id.*] Next, Jarrell sent Plaintiff to a holding cell with a false charge, where he suffered from the re-injury to his foot without receiving a dressing change. [*Id.*] Jarrell told other nurses that Plaintiff's wound had healed and that he no longer needed dressing changes and falsely entered this information into the computer so that the dressing changes stopped. [*Id.* at 4–5, 6.]

Three days later, a doctor ordered antibiotics, pain medicine, and daily dressing changes to continue. [*Id.* at 6–7.] On December 10, 2012, Defendant Pamela Derrick ("Derrick") sent Plaintiff out of medical refusing to clean the wound. [*Id.* at 12–13.] On December 18, 2012, Defendant Rosita Thomas ("Thomas") refused to change Plaintiff's dressing. [*Id.* at 11–12.]

Construed liberally, Plaintiff alleges an excessive force claim against Jarrell and claims of deliberate indifference to his serious medical need against all Defendants. He seeks an order stating that Jarrell violated Plaintiff's constitutional rights; $100,000 in compensatory and punitive damages from Jarrell; compensatory and punitive damages from Derrick, Thomas, Rowe, and the John and Jane Doe Defendants; and an order that Defendants not retaliate against Plaintiff for filing this lawsuit. [*Id.* at 15.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574

F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly

be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

6

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp*., 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Claims for Injunctive and/or Declaratory Relief are Moot**

As an initial matter, because Plaintiff is no longer incarcerated at Allendale [*see* Doc.
25 (notice of change of address indicating Plaintiff was transferred to MacDougall)], his
claims are moot to the extent he is seeking injunctive and/or declaratory relief. *Slade v.
Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding that former
detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages,
however, survive his transfer from Perry, *id.*, and, as public officials, Defendants are
subject to suit for damages in their individual capacities[5] in a § 1983 lawsuit, *Hafer v. Melo*,
502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).
Nevertheless, for the reasons set forth below as to Plaintiff's damages claims, the evidence
is insufficient to create a genuine issue of fact as to whether Defendants violated Plaintiff's
constitutional rights.

**Excessive Force Claim**

Plaintiff alleges Jarrell used excessive force when she roughly yanked off the
bandages and gauze on his pinky toe in one swipe, causing Plaintiff to cry out in pain and

---

[5] To the extent Plaintiff brings this suit against Defendants in their official capacities, Defendants are
entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The
Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama
v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11
(1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and
state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration
in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is
not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit
against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).
Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official
capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff
has alleged claims for monetary damages against Defendants in their official capacities, those claims must
be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh
Amendment.

8

re-injuring his toe. [Doc. 1 at 4, 8–11.] Defendants argue Plaintiff has failed to meet his burden to prove excessive use of force. [Doc. 46-1 at 14–15.] The Court agrees Defendants are entitled to summary judgment with respect to Plaintiff's excessive force claim.

The use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To state an excessive force claim, an inmate must show (1) that the correctional officers acted with a sufficiently culpable state of mind and (2) that the harm inflicted on the inmate was sufficiently serious. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The subjective component requires the inmate to demonstrate the officer applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6–7. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). The objective component of an excessive force claim is not nearly as demanding to establish because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Id.* at 9 (internal citation omitted). However,

> not every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push

9

> or shove that causes no discernible injury almost certainly fails
> to state a valid excessive force claim.

*Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (internal citations and quotation marks omitted).

Here, Plaintiff contends that Jarrell's yanking the bandage ripped away a scab that was helping with the healing process and, as a result, his toe began to bleed again. [*Id.* at 4.] Jarrell has submitted an affidavit stating that she asked Plaintiff to remove his then-current bandage, but Plaintiff refused to do so[6] and then began to act belligerently and began to threaten Jarrell. [Doc. 46-4 at 2.] Jarrell avers that she removed the bandages like she would for any wound, cleaned the area, and redressed the pinky toe. [*Id.*] Plaintiff has failed to present to the Court any evidence to corroborate his version of the encounter. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) (stating that conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion). Even crediting as true Plaintiff's uncorroborated version of the encounter with Jarrell, Plaintiff has failed to demonstrate that a genuine issue of fact exists as to whether a constitutionally excessive amount of force was used. *See Wilkins*, 559 U.S. at 37 ("As we stated in *Hudson*, not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" (citation omitted)). Accordingly, Defendants' motion for summary judgment should be granted with respect to this claim.

**Deliberate Indifference to Medical Needs Claims**

Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs by failing to provide him proper footwear with no holes and by not properly treating

---

[6]Plaintiff concedes that he refused to remove his bandages. [Doc. 1 at 4.]

a toe injury. [Doc. 1.] Defendants argue Plaintiff cannot establish his deliberate indifference claims because he cannot establish that his medical needs were sufficiently serious or that the his treatment rose to the level of deliberate indifference. [Doc. 46-1 at 5–14.] The Court agrees Defendants are entitled to summary judgment with respect to Plaintiff's deliberate indifference to medical needs claims.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)). Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one[7] and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials.  *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)).  As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs.  "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted).  Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment.  *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817).  The fact that a prisoner believed he had a more serious

---

[7]"A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F. Supp. 435, 454 (N.D. Ind.1981)).

injury or that he required better treatment does not establish a constitutional violation.  *See, e.g.*, *Russell*, 528 F.2d at 319.

   Assuming without deciding that Plaintiff can establish his medical needs were sufficiently serious, he has failed to establish a genuine issue of material fact remains as to whether Defendants acted with a sufficiently culpable state of mind.  With respect to being provided boots, Rowe avers that, based on SCDC policy regarding footwear, 90% of inmates are issued clogs; boots are available for inmates with work assignments such as maintenance, kitchen, and horticulture and for inmates who have a doctor's order for special footwear.  [Doc. 46-5 at 1–2.]  When Plaintiff demanded boots in November 2012, he did not have a doctor's order for special footwear.  [*Id.* at 2.]  Accordingly, Rowe issued clogs to Plaintiff per SCDC policy, and the smallest size available at the time was a size 6.  [*Id.*; *see also* Doc. 46-6.]  Thereafter, Plaintiff obtained medical approval for boots, and the boots were issued to Plaintiff on December 11, 2012.  [Doc. 46-5 at 2; Doc. 46-6.]

   With respect to treating the injury on Plaintiff's pinky toe, the medical records reveal that Plaintiff first reported to sick call complaining of a cut to his pinky toe on November 27, 2012.  [Doc. 46-9 at 10.]  His toe was cleaned and a bandaid applied; Plaintiff was also given extra bandaids.  [*Id.*]  The next day, Dr. Thomas E. Byrne, MD[8] saw Plaintiff and prescribed Motrin for pain and Keflex to prevent infection.  [*Id.*; Doc. 46-2 at 1.]  Plaintiff was seen for dressing changes daily from November 28, 2012 through December 1, 2012.  [Doc. 46-9 at 8–9.]  Medical records reflect that there was no infection or foul odor.  [*Id.*]  On November 30, 2012, Dr. Byrne also saw Plaintiff and extended the precautionary

---

[8]Dr. Byrne is not a party to this action.

antibiotics because he saw a small amount of pus.  [*Id.*; Doc. 46-2 at 2.]  Dr. Byrne avers that Plaintiff's toe was almost completely healed at the time, but Dr. Byrne prescribed antibiotics out of an abundance of caution.  [Doc. 46-2 at 2.]

On December 2, 2012, Plaintiff was discharged from daily dressing changes because his toe was healed.  [*Id.* at 8.]  Plaintiff was given bandaids and told to sign up for sick call if the wound recurred.  [*Id.*]  Plaintiff was seen again on December 13, 2012, and there was no infection or swelling noted.  [*Id.* at 7.]  He was seen again on December 14, 2012, and Dr. Byrne again ordered daily dressing changes, which occurred from December 14, 2012 through January 9, 2013.  [*Id.* at 1–7.]  Plaintiff was discharged from daily dressing changes on January 9, 2013 for being noncompliant during the dressing changes. [*Id.* at 1.]

Although Plaintiff may disagree with the treatment he received, Defendants have adequately addressed Plaintiff's medical needs.  Plaintiff was seen almost daily from November 27, 2012 through December 2, 2012 and from December 13, 2012 through January 9, 2013 for dressing changes on his right pinky toe even though all medical records reflect that there was no sign of infection.  Additionally, per SCDC policy, Plaintiff was provided the shoes he requested as soon as he received medical approval.  Plaintiff's disappointment in the treatment he received does not translate to deliberate indifference. As explained above, the Constitution requires only that a prisoner receive adequate medical care; the Constitution does not mandate that a prisoner receive the medical treatment of his choice.  *See, e.g., Jackson*, 846 F.2d at 817.  Plaintiff has failed to demonstrate a genuine issue of material fact remains as to whether Defendants acted with

14

deliberate indifference.  Accordingly, Defendants' motion for summary judgment should be granted with respect to these claims.[9]

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity. [Doc. 46-1 at 15–16.] The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and ... whether that right was clearly established at the time of the alleged violation.'"  *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)).

---

[9]Much of Plaintiff's response in opposition focuses on his diabetes being a serious medical condition [Doc. 52]; however, Plaintiff's Complaint fails to allege that Defendants were deliberately indifferent to his diabetes [*see* Doc. 1].  Instead, most of the Complaint focuses on his toe injury.  Although Plaintiff mentions in his Complaint that he needed shoes with no holes because of his diabetes, he does not allege any injury from failure to treat his diabetes.  Instead, his alleged injury was a result of a sharp object intruding into his clogs.  To the extent he alleges his toe injury should have been treated differently because he has diabetes, such argument is addressed above with respect to the treatment he received for his toe injury, and the Court has assumed without deciding that Plaintiff has alleged a sufficiently serious medical need.

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

16

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 16, 2014
Greenville, South Carolina